We have four argued cases today. First is U.S. Water Services v. Novozymes. Council Rae, you can proceed. Please go ahead. Good morning, Your Honors. In order to show inherent anticipation, Novozymes was required to establish that the use of phytase, as described in the fire arc, would necessarily, and inevitably, result in deposit reduction. The district court recognized that U.S. Water had adduced evidence that practicing vitin-antrum will not always result in deposit reduction. The court nonetheless granted summary judgment. This was error. Indeed, the district court found that whether or not vitin-antrum would always result in deposit reduction and U.S. Water's supporting evidence was not even relevant and not even a relevant consideration. But this evidence is not only relevant, it is the keystone of any inherent anticipation analysis, and it can't be ignored. Given the factual record of this case and the acknowledged genuine disputes of fact, the district court's decision cannot stand and cannot be reconciled with the court's precedent. This court has decided that the prior art must necessarily and inevitably result in the absent limitation for there to be inherency. Going back to the Glaxo case in 1995. Let me ask you this hypothetically. The prior art shows six ways of doing something, and only two of them inherently result in the result you're getting that. Is that enough for inherency? If there is a very specific example, like there was in one of the cases, there was a very specific example that would always result in the claimed limitation, then that might satisfy the inherency analysis. That's not the case here. There is no one example. Or at least we don't have factual findings to that effect here. We do not, no. In fact. Well, your real issue for your opposing counsel is necessarily result. And the court's finding that the prior art discloses conditions that necessarily result, and the court's finding that you had adduced evidence that shows that it doesn't necessarily result. I mean, that's where I think you should be directing here. That's correct. There's a genuine issue of disputed fact here. And this court's precedent, going back to Glaxo and other cases, has said, even if there is a possibility that the prior art could be practiced in a way that doesn't result in the claimed limitation, there can't be inherent anticipation. So it's not U.S. Waters' burden to prove that you would never get deposit reduction practicing the prior art. It's Novozyme's burden to prove that you would always get deposit reduction practicing bite and antrum. And the district court found, in fact, that we had evidence to the contrary that practicing bite and antrum would not always result. What is your best evidence for genuine issue of material fact? So the best evidence, we have three experts in this case, very credentialed experts. And each of them have testified that you can use phytase, as described in bite and antrum, and you will not see deposit reduction. And one of the things the district court got hung up on is that the natural result of phytase is a reduction in the amount of phytic acid in solution, but it doesn't necessarily follow that the natural result will be a reduction in deposits. So we have our expert, Eric Dorn, this is in the appendix at 853, who said one can remove a large majority of phytate from solution and still see no reduction in deposits. He explained, sorry, our expert, Rodney Sims, also said that bite would not always result in deposit reduction. And one of the things to remember, Rodney Sims is at A1009 to 10, and as Rodney Sims explained, there's 24 to 26 tons of phytic acid going through an ethanol plant on a daily basis, a lot of phytic acid. And only 1 to 2% of that phytic acid will ever deposit on surfaces in an ethanol plant. So you have to reduce a lot of the phytic acid before you're ever going to see any reduction in deposits. And we also have testimony from our expert, George Reed, who's a UW chemist, who explains that adding phytase will reduce phytic acid, but will not necessarily lead to any reduction in deposits, and that is at the appendix 762. And even Novazyme's expert in deposition acknowledged that he did not know how much phytic acid you would have to reduce in the solution before you would see any measurable reduction in deposits. And that is in the appendix at 85662 to 63. Does your patent tell us how much has to be reduced before you see reduction in deposits? The claim limitation that you have to see a reduction in deposits, it does not tell you, it has examples of how much phytic acid would be, have to be removed before you would potentially see those. The issue, I think, is that, as Mr. Sims explained in his report, there's not a one-size-fits-all for these plants. You can't, you've described in the patent, the inventors have described all the various parameters that you have to tweak, including temperature, pH, dosage, residence time, in order to see a reduction in deposits. That's taught in the patent. Is that your specific recipe that they say in the red brief doesn't exist? It is, yes. So again, every plant is different. They all use a different kind of corn mill, which can affect how much phytic acid deposit you get and how you can get a one-size-fits-all recipe, but looking at the patent, and looking at the experiments that were done, and looking at all the various parameters that the inventors said, this is going to affect whether or not you're going to see reduction in deposits. A person of ordinary skill in the art could get that reduction of deposits. And that's... And you do have specific examples, I think, four in your patent? That's correct, yes. I believe it is four. Yes. So the evidence that US Water has, and it's undisputed that US Water has this evidence, that Vite and Antrim won't always result in deposit reduction should have been dispositive on the summary judgment issue. Dispositive? You didn't move for summary judgment, right? That is correct. So dispositive... Your point is simply that the district court should not have granted summary judgment. Correct. It should have been dispositive on the question of whether summary judgment was appropriate. It was not. In the Bell Biofield case, the possibility that the prior art laser could be used to practice the claimed limitation was not sufficient to show inherency. Occasional results are not sufficient. And in the Trintec case in 2002, the court said, inherency leaves no room for probabilities or possibilities. And they said that this was in keeping with the strict identity requirement of anticipation. So we're talking about a reference which does not expressly disclose one of the claimed limitations of US Water's patent. Therefore, there is a burden on Novozymes to show that one of ordinary skill in the art would see that it would always result. That's how you get around the fact that it's not explicitly disclosed. One of Novozymes' other arguments, in addition to the recipe, is the coordination argument. They say that to the extent US Water contends that choices of Vite's dosage and so on are must be coordinated to achieve deposit reduction, there's no specific disclosure of what that coordination is. If you go back to the sites that I had, to Rodney Sims and Eric Dorn's declaration, they will say that you could look at US Water's disclosure, look at all the various parameters that they have identified as affecting deposit control, and one with no more than routine experimentation could get deposit reduction. So it's not a zero-sum game between whether Vite and Antrim inherently anticipate and whether or not the patents have 112 problems. These are two different standards, and the disclosures of Vite and Antrim are not the same as US Water's disclosures. The entire patent is about reduction of phytic acid deposits in an ethanol plant, which is completely absent from the prior art. Most recently in the Allergan case, this court held that, where it's even possible to practice the prior art in a way that would not— Can I ask you—I'm going to ask you the same hypothetical, but I want to make sure I understand your answer, and I want to make it a little more specific. The prior art has six different methods. One of them contains not the same kind of like four factors or whatever you were talking about before in precisely the same way your patent talks about them, but doesn't say monitoring of these four factors in this way will result in a reduction. But it, in all other respects, is equal to yours. But the other five are not. Is there inherency there because it discloses—the prior art discloses precisely that in that one method? Even though other parts of the prior art may not be—result in it, that one method there is the same as yours and necessarily would. If I'm understanding your hypothetical, and I think that I am, you're sort of getting at this idea of overlapping ranges, which is what we're talking about. Well, I'm not talking about overlapping ranges. I'm talking about the exact same range. And I know this is a hypothetical. It's not here, but let's say you have four factors to achieve this reduction in your specification, and they have the same four factors in one embodiment in their patent. But they don't say use these four factors in the same way as you do to achieve a reduction. But presumably, it will result in the same thing because it does precisely what yours would. If it were that—I mean, those are very specific facts. Would that be inherent? If you could show in that example, that very specific example, without hindsight and without the absent limitation, would always inevitably and invariably result, then I think there could be inherent anticipation there. Even if other parts of the prior art wouldn't inherently anticipate? Right. I think you could do that. I mean, it's sort of like in the King Pharma case—or no, in the Atlas Powder case. They found that there were overlapping ranges. And so that was a claimed compound to elements in various ranges, kind of ingredients. And the court said, OK, there's overlapping ranges here. But it didn't stop there. And that's kind of where the court stopped. And these are also very much factual questions. Yes, these are absolutely factual questions. So you still, in your example, you would still have to—the challenger of the patent would still have to show that within that example, you would always get the claimed absent limitation. And it's a factual question because inherency is a factual question. Is that what you're going to comment about with Allergan? Yes. And in Allergan, it's a factual question. And in Allergan, they only found that there was a possibility that the prior art could be practiced in a way that didn't result in the claimed invention. You can even have it was probable that the prior art— That was a case where they said it was possible that it would be—it's possible that it wouldn't be. You could have those eyedrops administered in a way where it doesn't touch the eyelashes. Correct. And so the district court said in that case that they didn't think that inherency had been proven. And this court said there was no clear error with that conclusion. It doesn't mean that the case would result—that that's a matter of law. It's a question of fact. Correct. Correct. But it certainly wouldn't be right for summary judgment in the Allergan case that there was inherent anticipation in light of the evidence that you wouldn't always get that absent limitation practicing the prior art. You're into your rebuttal time. Thank you. Mr. Tellickson. Thank you. May it please the court. The district court was correct in its ruling on anticipation. And the reason is that King is directly on point and dispositive. Isn't King like a simpler case? It's just a question of taking a drug with food, which seems like a much more simple situation in terms of the— I think it's right on point and squarely on the issues here because the limitation was take with food and you'll get this effect. And here, when you look at the claims of the patent, it's apply a phytase under these conditions, and those are conditions that have been in every—in the prior art and also in these fuel ethanol plants. And then you will get the phytic acid to be reduced to the soluble form. And then the claim says thereby you get the deposit reduction. It says a lot more than thereby you get deposit reduction. It's like ten lines, I think. But it's not your position—I just want to make sure I understand this—it's not your position that just because the first six steps of the claim are admittedly performed that necessarily the where-in clause is met. I don't mean necessarily, but it's instead you realize that you have a duty to show inherency on whether the where-in clause is met. Is that right? I think if those six steps are practiced, the evidence is that you will get deposit reduction. Okay, but you think—you agree that you had to present certain evidence that you would get. The evidence is, for example, Dr. Cole saying it's just science. When you reduce the phytic acid, you take it from its insoluble form and you reduce it, make it soluble, there isn't going to be the stuff to deposit. And that's—it's exactly what the patent teaches. Council mentioned example four. If you look at example four, all that it says is that you have a test tube with the deposits in it with no phytase, you have a test tube where there is phytase, and it's clear. And it says, therefore, you will get deposit reduction. It doesn't have all these sophisticated recipes that Dorn and Sims and their experts talk about. Those aren't in the patent anywhere. I understand your position. Do you agree that's a factual question, right? I mean, I understand your position that there's no genuine issue of material fact, but it's a factual question, right? Inherency? Inherency is a factual question, but here there is no factual dispute because VITE and Antrim teach the exact same steps, the exact same conditions, and therefore, if it happens in U.S. Waters patent, it will happen in VITE and Antrim. There's absolutely no question. Do you agree with your colleague that there's no evidence that any fuel ethanol plant ever practiced VITE or Antrim? Not at all, Your Honor. Dr. Cole went into that in great detail in his expert report. That's, I think, some of the most telling evidence is that these plants that are accused of infringement, some of them use very low dosages of phytase, and they get deposit reduction. They get enough deposit reduction that they keep buying phytase, and Dr. Cole said that is evidence. These ranges, these temperatures, these dosages, these pHs are exactly what U.S. Waters is accusing of infringement. They aren't getting deposit reduction because they're practicing VITE and Antrim. So that is absolutely not a true statement when they say that. See, these parameters— Show me what's in the citation of the record on that. We can get that, but it's Cole's expert report. Well, if it's key to you, you should know it. I apologize, Your Honor. Cole goes on at length about the dosages. He compares the dosages from the patent. He compares the dosages in the eight plants that are accused of infringement. He lines them up in a chart. No, no, before it began its infringing activities. That was their argument. Well, I don't know that that's relevant, whether somebody was practicing it before these plants. But that's not my question. I'm sorry. Let me read to you from their yellow brief. Yes. Novozymes does not dispute that before it began its infringing activities, there is no evidence that any fuel ethanol plant ever practiced VITE or Antrim, let alone achieve deposit reduction from doing so. That's at page 14 of their brief. Well, Your Honor, I think the Antrim reference and the VITE reference, even if nobody ever practiced those, are anticipating references. I think the evidence was not developed as to what other plants were doing things before these modern days. There's an easy answer, yes or no. I don't know that the record shows that they were practicing it. If you're asking were they practicing it in a way before these allegedly infringing plants, the answer is I don't know. But they are practicing VITE and Antrim in that they are practicing the exact parameters of VITE and Antrim today. And last year and the year before and the year before. And those plants are accused of infringing. Those plants are said to infringe because they reduce deposits. And yet they are doing the exact parameters that VITE and Antrim teach. And that's why there's deposit reduction. And that's why absolutely necessarily if you do what VITE and Antrim teach, you get deposit reduction. There's no question of that. Well, I'll accept your I don't know answer. Okay. So, I mean, I think it's important to understand a little bit about what this chemical reaction is that occurs. Do you have a response to some of the expert testimony that was cited by opposing counsel, the testimony from Dorn and Sims and Reed, and why that doesn't create a genuine issue of material fact? Yes, Your Honor. The answer is that King and Berdegall before King said that if it's not in the claims, it doesn't matter. And their claims do not recite some specific recipe that is necessary in order to achieve this deposit reduction. This is something that came up in litigation when they realized that Antrim and VITE teach exactly what they're doing. There's nothing in the patent. You can read the patent from cover to cover, and there's nothing that says in order to get deposit reduction, you need to do this but not this. There's some secret combination. The other answer is that Antrim actually— I'm not sure I understand that. Is there nothing in the specification that further illuminates the different steps you apply it? No. It says it will result in deposit reduction. If you reduce the phytic acid, it will result in— That's what the patent says? Yes, it does. I thought that there were these four examples where they were successful. Yeah, I think it's important, Your Honor, to understand those examples. Example one simply says that there's phosphorus. Example two simply says that the deposits have what's called phytate, which is the phytic acid with the minerals lodged in between there. Example three simply takes a solution from the plant and applies phytase, and it reduces the phytic acid to the soluble form. It never says anything about reducing deposits. And then in four—four is key. Yes, it does. It says which is the source of the deposits. Right. It's saying that if you reduce phytic acid and its salts to the soluble form, therefore you will get a reduction in deposits because that's all that's necessary. And that's the point, Your Honor, is that antrum and vite were doing the same thing. Actually, in their disclosure, they don't talk about putting this in the beer column, for example, do they? No, they put it in liquefaction in antrum and fermentation in vite. You don't put it in the beer column. It's a process. In the prior art, you don't put it in the beer column. Nor do you in the—I mean, the claims that they broadened out are now broader. I understand the claims are broader, but don't they have a where-in clause? And in that where-in clause, there's a function that they achieve. And so is it your position that they can't have broader claims and claim the specifics through the functional language at the end of the claim? Your Honor, the point is that if you reduce the phytic acid, you've got the phytic acid with the magnesium salts joined up with it. That's insoluble. If you take phytase and you reduce it, you chop the arms off the phytic acid, and it's now soluble. It will never deposit because it's soluble. It can go all the way through the factory and out the back end, and it won't deposit. How do I know that's so? Because that is the science that Dr. Cole talks about. That is exactly what— Isn't there a different expert testimony before the court in this case? But none of that is in the claims, Your Honor. Isn't it possible that their claims don't work? Well, then that's why we have the alternative argument that it's invalid for lack of a written description because if they're right that you need this secret sauce, this sophisticated recipe, their claims don't claim it. But that's not before us today. It's an alternative argument. The alternative argument. But did the district court rely on it? But the district court did not rely on it. No, we said that if they were right that there is a sophisticated— Well, that's something for the district court to decide, not us. Well, you can affirm on an alternative ground. Not an alternative ground that the district court didn't even consider at all. Not that it requires factual findings. You don't even need to get there, Your Honor, because it's not in the claims. If we look at the claims— I'm just going to point out to you where you are in your time, but keep going if you choose. If you look at the claims, all it says and all it requires, if you look at the six facts— I mean we know what the claims say. We've read them. I mean I think the problem is it may be they've added this functional claim language on, and those prior six steps don't always result in what they're claiming either. But that doesn't mean that you don't have a problem with the summary judgment here because what you have to prove is those six steps always result in that process, and those six steps were in the prior order. And they do. Dr. Cole says, and they don't dispute—the district court says Dr. Cole has never disputed on this, that when— Their science experts do dispute it. Pardon me? Their science experts do dispute it. No, what they say is that you need to have a sophisticated recipe, and our point is that King says if the sophisticated recipe is not in the claims, which it is not, then it doesn't matter, and that's why the court was able to— It doesn't matter for what purpose? For inherent anticipation because if you don't claim it, you can't rely on it. That's exactly what King stands for. But they didn't claim it in the seventh step where it says it has to result in this. I mean it's a problem with this kind of functional claiming. It's not very clear, but it still is there. So if there are some variations of the first six steps that result in seven and some that don't, then I don't see how it's always inherent. But they don't—if you practice what's in the claims, adding phytase at a dosage 10 parts per million or less in this temperature range at this pH without the addition of acid and breaking down the phytic acid, it says thereby reducing the formation. Those steps are in all 3-lecithin plants. Are you saying that it's just—their experts are just flat out wrong, that if you do those six things, it won't always result in a reduction? I think their experts are—it's—there's no evidence that they're right. But the reason that you don't need to consider it is because it's not in the claims. King says if it's not in the claims, you cannot consider it. One last point, and that is that Antrim, even if their expert is right and you need to put a certain amount in before you fall off this cliff, Antrim example 1 says reduce the phytic acid to zero. And so even under—that's example 1 of the Antrim reference. And so if you follow that and you reduce it to zero, even with their first-order kinetic cliff argument, you get to zero and all of the phytic acid is reduced and deposits, even by their admission, would be reduced. Was the judge in error when the decision says at J28, U.S. Water has adduced evidence that practicing VITE and Antrim will not always result in deposit reduction? What he is referring to there is they adduced evidence which does not need to be credited because it's not in the claims. They adduced this evidence of this secret sauce or this sophisticated recipe, but they didn't claim it. And it's not even in the patent. There's nothing in the patent that says here's what you need to do. If you don't do this, it won't reduce deposits. If you do this, it will. So it's not even in the spec like it was in King, but it's certainly not in the claims. And that's why he says they adduced evidence, but I don't need to rely on it because it's not in the claims. I'll reserve my little bit of time. We'll give you a couple of minutes. I have three points to make on rebuttal. The first one is very brief. Just on this last point about example one, I would refer the court to the SIMS expert report, which is at A1009-1011, where he discusses why this example would not necessarily result in deposit control, and at a minimum this is a factual dispute. Second, we've talked about this use of the word thereby, but deposit reduction is an affirmative limitation of the claims. Nova Zymes has never alleged otherwise. In fact, Nova Zymes has a non-infringement position that despite the fact that these infringing plants add phytase to the ethanol, that we have not proven that we'll actually get deposit reduction. So they're using that limitation as a non-infringement defense. Do you think your six steps always result in reduction? No, I think you need to go to the patent and look at the teachings of the patent in order to get that. And finally, this idea that Vite and Antrim are commensurate with these patents. They're not. Nobody was using Vite or Antrim in a way to reduce deposits. Nobody was using phytase in a way to reduce deposits until they learned of U.S. Water's method, either from U.S. Water or from Nova Zymes after Nova Zymes learned about it. I'll save the rest of my time unless you have questions. Thank you. Two minutes. Thank you, Your Honor. If I could just address briefly inequitable conduct. What we have here is an entire another litigation, this Chemtreat litigation, that was not disclosed to the patent office. They had their lawyer, prosecution lawyer, Dr. Skoug, who said in the patent office, these claims are distinguishable over Vite because you add it to fermentation and not at the time where their claim said to the back end, to back setter stillage. Within days, he said in the Chemtreat litigation, in a declaration, a sworn declaration. Which involved the 244 patent, which is not an issue here. It's not an issue here. It's the parent case to these patents. But the point is, Your Honor, and Judge Schiltz in the transcript that also should have been disclosed to the patent office said, how can you stand before me and tell me one thing that these are the same, that they're equivalent when you told the patent office, your lawyer told the patent office that they were different and distinguishable? If the examiner had had the Chemtreat litigation and had Skoug's declaration and Schiltz's transcript and Skoug's deposition where he admitted making this distinction, offering no explanation, just like in U.S. Willowood, there was no explanation for why this wasn't disclosed. Well, the examiner was aware of the differences between the pending claims of the patents in suit and the 244 patent, right? Well, it's in the record, but they said they were generally patterned after and similar. And then they also added two other limitations at the same time, which they said were patently distinguishable while they withheld this trade secret information, where their own inventor, Mr. Johnson, said it's not in the specification. It is not in the specification. It's a trade secret. They didn't tell her that either when they were arguing for why it should be patented.  Thank you.